## AMERICAN CIVIL LIBERTIES UNION et al.
### v.
### General William C. WESTMORELAND, Chief of Staff, United States Army, et al.

### No. 70 C 3191.

United States District Court,
N. D. Illinois.

Jan. 5, 1971.

William J. Bauer, U. S. Atty., for the Government.

Alexander Polikoff, Joel J. Sprayregen, Chicago, Ill., for ACLU.

Bernard Weisberg and Thomas Todd, Chicago, Ill., for plaintiffs.

AUSTIN, District Judge.

There has been a cliche, or an accepted statement from the past that a certain profession is known as the world's oldest profession. I question that. I think the world's oldest profession is spying, and it started in the Garden of Eden when somebody was looking and saw Eve eat the apple. And then Cain started spying on Abel.

Spying goes back to antiquity, and according to the Old Testament, all the way back to the Garden of Eden.

I think what has been conceded as the world's oldest profession must at least yield first place to spying, and, of course, it has been carried down from that time at the beginning to the present time. It has had its advocates, Judas, Mark Anthony, Nathan Hale, and I suspect that maybe Mr. O'Brien, in going around the country, saw so many statues of Nathan Hale that he might have thought maybe there will be one some day for John M. O'Brien as a superspy of all time—Mata Hari, Edith Cavell, Richard Philbrick, counterspy, the neighborhood curtain peakers that are watching as their neighbors go by to see what kind of shape they are in or who they are taking home with them that day. They exist on your block and they exist on my block and have for many years and will continue to exist.

Of course, there was a possibility that maybe if somebody drops out of Mission Impossible it might leave an opening for a new actor, a new good-looking actor.

■ There is no question that the administration has a right to use all the facilities available to the administration to try and fulfill the oath that was taken to protect and defend the Constitution and to preserve the Constitution from all enemies foreign and domestic, and I, at this time, strive as I have endeavored to, have great difficulty in determining that

there has been any violation of anybody's constitutional rights.

The Fourth, Fifth and Ninth have been abandoned. We are now down to the First Amendment, the chilling effect of this activity on someone's freedom of speech.

If there has been anything disclosed by what we have heard here for the past week, if we must rely on Army Intelligence, that there will be no seven days in May in this country, a man on a white horse will never arrive.

This evidence indicates that typical, gigantic Washington bureaucratic boondoggle. Military intelligence is the Army's WPA, its leaf-rakers, its shovel-leaners, and paper-shufflers. It has revealed that there are too many Colonel Throttlebottoms, Major Ashtired—regional Special Operations Officer Fumbles and uncontrollable special agents Bumbles seducing unwitting bartenders to assist in this threatening, menacing assemblage of Keystone Cops.

The chief beneficiary of military intelligence has been newspaper circulation.

The chief menace has been the increase in air pollution from burning newspapers from which has been extracted, for dossiers, valuable secretive bits of common knowledge available to all who can read.

I think unquestionably the first appointment of all ancient Pharaohs was a papyrus clipper, and that has gone down from that day to this through all of the bureaucratic assemblages on the local, state and national level.

I hope that those who have testified and swore that they were chilled by the Army surveillance have been warmed by the revelations in this hearing. I am still confused and bemused and puzzled as to why one of the witnesses, Mr. Miller, who admitted reading the same clippings in his file in the sanctity of his office, why doing this there had no effect on his thermometer. I think perhaps he read and re-read them because they tended to warm the cockles of his heart.

This clipping business is a national pastime of all of those who have some desire to see themselves in print.

■ I find that while there is no violation proved by a preponderance of the evidence of the violation of any constitutional rights, there has been a tremendous waste of taxpayers' money in hiring people to perform the duties that were performed as revealed by the evidence in this case, and this is not limited merely to one branch of the federal government, it is not limited, based on my experience, to all branches of the federal government, all of whom have papyrus paper clippers to preserve for posterity and their grandchildren their importance while they occupied the federal scene.

There has been much made of the fact that last June there was a great burning in Washington or here, which also tended to pollute the air, but I don't think that it was because anybody thought that anyone's constitutional rights were violated. Perhaps there were some running for public office last fall that thought that this might affect their chances of their candidacy, or maybe they wished to conceal this boondoggle that I have heretofore referred to.

The Court denies the request for a declaratory judgment.

■ The Court finds that the Army, for whatever reason, has sought to eliminate from their files this mountain of paper, I feel unable to restrain any agency whose job it is to preserve and protect the Constitution to limit their activities. Only the thin-skinned, and I have had no thin-skinned witnesses testify before me in this case, could have any chill as a result of the evidence that has been disclosed in this courtroom.

Foot surveillance—I don't know whether that is done in three-quarter time or how it is done, but it is ridiculous, but it is a term that tends to glamorize a spy who has been looking at too many statues, statues of Nathan Hale.

The request for a preliminary and a permanent injunction to limit that surveillance is denied.

The request to destroy the remnants of whatever files still remain is denied.

I think Shakespeare, at the time that he wrote some of his yarns, may have contemplated that this case might come up and named two of them, in regard to the evidence that has been disclosed here, one was "A Comedy of Errors" and the other was "Much Ado About Nothing."

That is the findings of the Court, that is the decision of the Court.

We will stand adjourned, Mr. Marshal.